## MOORE, Adm'r, *vs.* LESEUR & WIFE.

1. Although a demurrer opens the pleadings and reaches back to the first error committed, yet it cannot be visited, in favor of the party demurring, upon separate and distinct pleas, on which he has previously taken issue.

2. Where a party, without objection, takes issue on a bad plea and goes to trial, he cannot afterwards avail himself of the irregularity.

3. By the common law, when the plaintiff failed to demur to the plea of *nil debet* pleaded to debt on a specialty, he was bound to prove every allegation in his declaration. Our Statute, (Clay's Dig. 340, § 152,) changes the common law in this respect, so far as to dispense with proof of the execution of the instrument declared on, whether under seal or not, unless denied by plea supported by affidavit, but the plaintiff is still bound to produce the instrument on the trial, and if, when produced, it varies from that described in the declaration, the defendant may move to reject it, or test its legal sufficiency by demurrer to the evidence.

4. Whether a writing sued on is a sealed instrument or not, there being no such ambiguity as would authorise explanatory parol proof, must be determined by the construction of the instrument itself, and is a question peculiarly within the province of the court.

5. A writing executed prior to the statute of 1839, with nothing on its face to indicate that the parties intended it to operate as a specialty, except a scroll after the signature, with the word *seal* written within, is not to be regarded as a sealed instrument.

6. Where to a plea of the statute of limitations, in an action against husband and wife for a debt contracted by the wife whilst *sole*, the plaintiff replies a subsequent promise by the defendants, &c., it is necessary for him to prove a promise that is binding upon *each*, otherwise the issue is not sustained and he cannot recover.

7. A promise by the husband to pay the debt of the wife, contracted *dum sola*, is not in law the promise of the wife, and will not take the demand as against her out of the influence of the statute of limitations.

Error to the Circuit Court of Marengo. Tried before the Hon. Geo. D. Shortridge.

Byrd, Henley and Vary, for the plaintiff in error.

Brooks and Manning, for the defendants.

CHILTON, J.—This was an action of debt brought by the plaintiff in error to recover of the defendants upon a writing, in the following form—" $2535.—By the 25th December next, I promise to pay the Thomas J. Moore, administrator of H. H. Moore, deceased, twenty-five hundred and thirty-five dollars,

for value received of him.—Feb. 10th, 1837—(signed) PENE-
LOPE N. MOORE—[SEAL."]

The first count of the declaration describes this instrument as a writing obligatory—sealed, &c. The second count declares upon it as a promissory note. The common *indebitatus* counts are added. The defendants pleaded to all the counts, " that they did not owe the said sums of money demanded, or any part thereof, in manner and form," &c. ; and to the 2d, 3d and 4th counts they pleaded the action did not accrue within six years next before the commencement of this suit, &c. The plaintiff took issue upon the first plea, and to the second replied that the defendants did, within six years next before the commencement of the suit, undertake and promise, &c. Rejoinder that the said Penelope N. Leseur did not, while *sole* and unmarried, promise within six years next before, &c. To this rejoinder the plaintiff demurred, and the court sustained the demurrer.

The plaintiff having introduced and closed his testimony, the defendants filed their demurrer thereto, in which the plaintiff joined, and thereupon the court adjudged the law upon the facts in favor of the defendants and gave judgment against the plaintiff for cost.

It appears from a bill of exceptions, which it is agreed shall be considered as containing the facts, as if set out in a demurrer to the evidence, that the plaintiff read to the jury the note signed by Penelope N. Moore, who was *sole* at the time she gave the same, and to which note, after the signature, was a scroll composed of circumflex lines, within which was written the word " seal." There was some evidence from which a jury might infer a promise on the part of Leseur to pay the debt sued for within six years next before the commencement of the suit. At all events, we will consider this fact as conceded, since the concession does not affect the result of the cause in this court. It appears, further, that Mrs. Leseur has a separate estate settled upon her, and that her husband is, and was at the time he acknowledged this demand to be subsisting against him, her trustee of such estate.

Several grounds are taken in this court by the counsel for the plaintiff in error, why this judgment should be reversed. We have deliberately considered them, and will now state, as briefly as we can, our conclusions.

1. It is insisted that the plea of *nil debet* to the first count, which is upon a sealed instrument, is bad, and that the demurrer to the rejoinder of the defendants to the plaintiff's replication to the second plea reaches back to the first plea, notwithstanding the plaintiff had taken issue upon that plea, raising no objection whatever to it. We do not so understand the law, as to the effect of this demurrer. A demurrer opens the pleadings and goes back to the first error, but we have nowhere seen it held that it could be visited back in *favor of the party demurring upon separate and totally distinct pleas, upon which he had taken issue, thereby waiving all objection to them,* and expressly withdrawing them from the consideration of the court on demurrer. We apprehend no such decision can be found.—1 Chitty's Pl., (edit. of 1847,) 668-9, and note 1.

2. But it is here insisted that the plea of *nil debet* was no plea to the first count, and that the court should have entered upon that count, *nil dicit.* We concede, the plea was bad to the first count. Such have been our uniform decisions, and such was the practice under the rules of the common law.—1 Chitty's Pl. 482. But the plaintiff took issue upon it without objection, and went to trial. It is then too late to object for such informality. He treated it as a legal plea, and the cause under the issues presented went against him; he ought not now to be allowed to allege its invalidity, as under such a precedent, a plaintiff might often find it highly advantageous to take issue upon a bad plea, since, if he lose his case, he would be sure of setting the proceedings aside. The court did not err in refusing to arrest the judgment, and of course should not have rendered judgment for the plaintiff. The case of Meyer v. McClean, surv., &c., 1 Johns. R. 509, (S. C., 2 ib. 183,) fully sustains this view. The plea must be demurred to, if the plaintiff desires to object to it.—2 Johns. Cas. 257; Bullis v. Giddens, 8 Johns. R. 83. So when, to an action of debt, the defendant pleaded *non assumpsit*, and issue was taken and tried, it was held that he could take no advantage of the irregularity.—Stone v. Gover, 1 Ala. 287.

3. The plaintiff contends that the plea of *nil debet* admits the instrument declared on to be a sealed obligation, and that therefore the defendant could not object to its legal effect as such.

By the common law, when the plaintiff failed to demur to the plea of *nil debet*, when pleaded to debt on a specialty, such as on a bail bond, or bond setting out the condition and breach, &c., he was bound to prove every allegation in his declaration. 1 Chitty's Pl. 183. Our statute, which declares that the court shall receive the writing, whether under seal or not, as evidence of the debt or duty for which it was given, and that the defendant shall not deny the execution of the same, unless it be by plea supported by the affidavit of the party putting it in, (Clay's Dig. 340, § 152,) changes the common law in this respect, and in our opinion, while it dispenses with proof of the execution of the note or writing declared on, the plea not being sworn to, yet the plaintiff is bound to produce the instrument as evidence, and if that produced varies from that described in the count, the defendant may move to reject the evidence, or test its legal sufficiency upon demurrer to it.

4. The next, and the important question in this case, is, whether the note sued upon is or is not a sealed instrument. This question, the plaintiff argues, should be tried by the jury. We do not think so. It is peculiarly the province of the court to construe written instruments and expound them to the jury when requested to do so.—Long v. Rodgers, 17 Ala. 540; Bank at Mobile v. Boykin, 9 ib. 320. If the court refer their construction to the jury, it is the reference to them of a legal question, and clearly erroneous. The court must look to the instrument itself to ascertain its character, and in this view, it is wholly immaterial what the parties intended, unless the evidence of their intention is found upon the face of the writing, there being no such ambiguity as would authorise explanatory parol proof.

5. We come then to consider, what is the character the law affixes to this instrument. It is very clear that the statute of 1839 can have no influence upon this contract, which was entered into before it was passed. That statute was not designed to change the nature of contracts already made, but to operate prospectively; hence the instrument in question must be tested by the law which existed at the time of its execution. Thus tested, we have no hesitation in pronouncing that the word seal, written in a scroll after the signature, without any thing further to indicate the intention of the parties to make it a sealed instrument, does not constitute it a specialty. This precise question

came before the court at an early day, (Lee v. Adkins, Minor's R. 187,) and it was adjudged in accordance with the view we have expressed. The question again arose in Carter & Carter v. Penn, 4 Ala. 140, and there it was held that although the note was executed since the statute of 2d Feb. 1839, yet the word "seal," written within circumflex lines after the signature, did not constitute it a sealed instrument. The case of Linsey & Atkinson v. The State, 15 Ala. 43, is very different from the one before us. That arose under the statute of 1839. In that, the parties in the *body of the instrument* gave most indubitable proof of their intention to create a sealed instrument. They call it an "obligation." They "bind and oblige themselves," &c. &c.; and follow the obligation with their scrolls and the word seal written therein. In this case there is nothing on the face of the instrument to aid it, and we cannot agree that the fact that it was given to an administrator, whom the statute requires to take bond, &c., would authorise us to place a different construction upon it. The addition of administrator, &c., affixed to the name of the payee, the law considers a description of the person.—Peters v. Heydenfeldt, 3 Ala. 205; and for the court to go out in search of the extraneous matter of fact to ascertain whether the party intended the instrument to operate as a parol undertaking, or a specialty, would be to throw open the door for parol proof to vary written instruments, and to make the court the trier of such facts as might indicate such intention. This would result in the greatest uncertainty and inconvenience.

We think it is clear, under our previous decisions, from which we are not at liberty to depart, as we should doubtless destroy rights which have grown up under them, that this is not a sealed instrument.

6—7, The remaining inquiry is, conceding that the husband promised to pay this demand, would such promise under the pleadings in this cause, take the case without the influence of the statute of limitations, so as to authorise a judgment against the husband and wife, or if not against both, whether such promise would justify the court in rendering judgment against him alone? It is very clear that no judgment could properly be rendered in this case against the husband alone, for the reason that there are no allegations in the pleadings which would

Moore, adm'r, v. Leseur & Wife.

justify such judgment. The suit is against both husband and wife, to recover upon the debt of the wife, contracted by her *dum sola*, and for which he is sought to be charged by reason of his intermarriage with her. To the plea of the defendants, that the cause of action did not accrue within six years next before the commencement of the suit, the plaintiff replied, that the defendants did undertake and promise within six years, &c., in manner and form as the plaintiff hath above thereof complained against them, and upon this replication issue was taken. If the fact, set forth in the replication, of a subsequent promise, be not true, the plaintiff fails to make out his case, and consequently cannot recover. To sustain the issue in favor of the plaintiff, it therefore becomes necessary for his counsel to maintain the proposition, that the promise of the husband, after the marriage, takes the case without the statute as to the wife. It will not do to hold that because the plea is entire, and both the defendants unite in it, that each is concluded by whatever would conclude the other. However true this may be as a general rule of pleading, it does not apply to this case ; for here the issue is upon the replication, which avers the undertaking and promise of both husband and wife, and the *onus* of proof is upon the plaintiff. Since, then, it is not pretended that the wife, aside from the husband's promise, has done any thing to take the case without the statute, the plaintiff in respect to his replication brings himself within the influence of the rule he invokes against the defendants, namely, that the replication avering the promise of both is entire, and can alone be sustained by proof of such promise on the part of both. The rule extends as well to replications as to pleas.—Truman v. Hurst, 1 Term R. 40; Webber v. Terill, 2 Saund. 127, note *e; 1* ib. 28, n. 2. So that the question resolves itself into this, does the promise of the husband to pay the debt of the wife, contracted *dum sola*, amount in law to a promise of the wife, so as to take the demand as against them both out of the influence of the statute of limitations? Upon this point, we think the law is settled against the plaintiff in error.—Angel in his work on Limitations, (p. 289,) says, "A promise by the husband that he will see a debt paid, which the wife contracted when *sole*, which has been barred by the statute, will not remove the bar in a suit against husband and wife." For this, he cites Powers v. Southgate & Wife, 15

Verm. R. 471, which fully sustains him. In Pittam v. Foster et al., 1 B. & C. 247, (S. C. 8 Eng. C. L. R. 106,) the Court of King's Bench held that the promise of a co-obligor did not take the case without the bar of the statute as against a married woman, who executed the note when *sole*, jointly with the party promising, but who married previous to such subsequent promise. Abbott, C. J., said, " The marriage of a woman, who is one of several joint makers of a note, may create great difficulties in suing ; but when such difficulties occur, they must arise from the fault of the holder of the note in not enforcing. payment before six years have expired." In that case the wife had been married for more than six years before the action was commenced, and it was said she had no power to contract or make a promise after the marriage, and that "no one else could make a binding promise for her." The wife during the coverture could make no promise which could be enforced *in a court of law;* much less then could a binding promise be implied by law from the promise of the husband, either expressly made or infered from his having charged the plaintiff with the assets for which the note was given, in the settlement had in the Orphans' Court. See, upon this point, Kline v. Guthart, 2 Penn. R. 490; Angel on Lim. 289; Clancey's H. & W. 173.

The case of Powell v. Powell, 10 Ala. 900, does not militate against the view here taken. In that case, it was held that the admissions of the husband, made in a conference with the supposed debtor to the wife, arising out of transactions with her while *sole*, that nothing was due, cast upon her the burthen of showing that the parties were mistaken. The husband has power to release or discharge the debtor from *liability* on choses in action accruing to the wife while *sole*, (Clanc. H. & W. 110,) and his admission during the coverture, that nothing was due him in her right, may well be received against her after the termination of the coverture ; but it is quite a different question whether he can create a liability upon the wife, or revive an extinguished liability, so as to charge her in a court of law, either with or without her consent. That he occupies the relation of trustee of her separate estate, makes no difference whatever, so far as the legal remedy is concerned. It is only in a court of equity that she can be treated as though she were *sole*, in respect of her separate estate, We would not, however,

have any thing we have said construed into an intimation that the facts of this case will justify relief in a court of equity. We have not examined that question, and it would be improper to express any opinion in relation to it.

It follows from the views we have expressed, that the court did not err in giving judgment upon the demurrer for the defendants below. It is therefore affirmed. ·